**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **RICKIE LEWIS,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:18-cv-273 (MTT)** |
| ) | |
| **BLUE BIRD CORPORATION,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## ORDER

Defendant Blue Bird Corporation moves for summary judgment on all claims.

For the following reasons, that motion (Doc. 36) is **GRANTED**.

## I. BACKGROUND[1]

In June 2015, Plaintiff Rickie Lewis, an African-American, was hired by

Defendant Blue Bird Corporation as a maintenance technician, with responsibility for

routine maintenance and repairs. Doc. 44-2 at 8. Maintenance technicians worked

under group leaders, who would assign them preventive maintenance tasks, or PMs,

but did not have authority to discipline, hire, fire, or demote technicians. *Id.* at 9; Doc.

15 at 58:3-61:10. Kenneth Gregory, who supervised the maintenance department,

testified that Lewis was unpopular with his coworkers. Doc. 36-2 ¶ 18.[2] Gregory also

testified that some of Lewis's coworkers threatened to quit if they had to keep working

---

[1] Unless stated otherwise, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[2] Lewis disputes this fact, arguing that his unpopularity "stem[med] from his not tolerating incompetence and misbehavior" by others. That may be, but he was still disliked by his coworkers. Doc. 44-2 at 10-11.

with him.[3]  Doc. 36-4 ¶ 7.  Mike Willard, a Group Leader, changed Lewis's job responsibilities so that he would work primarily by himself.  Doc. 39 at 77:16-24.

On December 9, 2015, Gregory contacted the Director of Human Resources and asked her to prepare a written warning for Lewis regarding his job performance.  Docs. 36-2 ¶ 24; 44-2 at 11-12.  On December 10, 2015, Lewis applied for the job of Group Leader for the Weekend Shift.  Doc. 44-2 at 2.  On December 14 or 15, 2015, Lewis received the written warning, which stated his job performance was unsatisfactory because he was "not communicating well with [his] peers" and would "often get off task with assigned duties."  Docs. 36-4 at 7; 36-2 ¶ 28; 44-2 at 12.  Blue Bird has a policy that any employee who has received a written warning in the previous six months is ineligible for all internal job postings.  Docs. 36-2 ¶ 35; 44-2 at 14; 36-6 ¶ 22, at 92.[4]  On January 14, 2016, Blue Bird hired Thomas Britt, who is white, for the Group Leader position.  Doc. 44-2 at 17.  On January 26, 2016, Lewis filed a charge with the Equal Employment Opportunity Commission for age and race discrimination, alleging harassment and failure to promote.  Doc. 39 at 199.

---

[3] Lewis disputes this as "self-serving" and as hearsay.  Doc. 44-2 at 11.  Like all helpful evidence, it is self-serving, but that does not make it inadmissible.  Nor is it hearsay.  It is offered to demonstrate that expressed dissatisfaction with Lewis was a factor in Blue Bird's personnel decisions.  Unless otherwise noted, this answers all Lewis's hearsay objections: The statements are not offered to prove the truth of the matter asserted, but rather to establish the information that factored into Blue Bird's personnel decisions.

[4] Lewis disputes this for the sole reason that this policy is inconsistent with the employee handbook.  Doc. 44-2 at 14.  But it is not inconsistent: the handbook states that "[p]ast work performance, attendance, *past disciplinary occurrences*; and the ability to perform the Job after a reasonable training period will also be used to determine if an employee is qualified for the promotion."  *Id.* (emphasis added) (citing Doc. 36-6 Exh. A).  Lewis argues that the handbook "nowhere states that there is a hard and fast rule" regarding written warnings and that Lewis had not been specifically informed of the policy.  *Id.*  But there is no inconsistency between the reference to past disciplinary occurrences in the handbook and the rule against promoting employees with disciplinary warnings.  Further, that Lewis received no notice of that policy does not refute Blue Bird's contention that it had such a policy.

After Britt's promotion, Lewis worked under him on the weekend shift. Doc. 39 at 137:23-138:12. But Lewis and Britt did not work well together: Gregory testified Lewis "did not take direction well from Britt," and Lewis testified he "didn't trust Thomas Britt" based on Lewis's "gut instinct." Docs. 36-4 ¶ 21; 39 at 194:6-22. Blue Bird claims that Lewis missed a meeting on February 7, 2016, and was uncooperative with Britt later, but there is no admissible evidence supporting that claim.[5] On February 8, 2016, Britt asked Lewis to meet with him, but Lewis told Britt he was only willing to meet with him at the Human Resources office. Docs. 36-2 ¶ 72; 44-2 ¶ 72; 39 at 193:22-194:25, 208. Britt contacted Gregory, who decided to send Lewis home for the day. Docs. 36-2 ¶ 73; 44-2 at 21. Lewis sent Mike McCurdy, Blue Bird's Vice President of Human Resources, an email, copied to EEOC personnel, claiming Gregory had suspended him in retaliation for his January EEOC charge. Docs. 36-3 ¶ 1; 44-1 ¶ 15; 39 at 208. On February 12, 2016, Blue Bird issued Lewis a written warning for failure to follow instructions and failure to perform work assignments. Docs. 36-2 ¶ 75; 44-2 at 6, 21; 39 at 220.

On March 18, 2016, Lewis applied for the position of Road Test Inspector, and McCurdy made an exception to Blue Bird's bid policy so that Lewis would be eligible despite his written warning.[6] Doc. 44-2 ¶¶ 78-79. In April 2016, Lewis was awarded the new position, which was in the Quality Department. Doc. 44-2 ¶ 81.

---

[5] Blue Bird's claim is based on a declaration by Gregory, but as Lewis's hearsay objection recognizes, Gregory does not appear to have personal knowledge of what occurred between Lewis and Britt.

[6] Philomena Washington, Blue Bird's employment compliance manager from June 2016 to present, states this is the only exception to the policy of which she is aware, and there is no evidence of other exceptions in the record. Doc. 36-6 ¶¶ 3, 33-34. And Lewis does not argue Blue Bird ever made another exception to the bid policy.

Lewis still disputes this because Blue Bird hired Thomas Britt despite Britt's not having enough years of maintenance experience for the Group Leader position. Doc. 44-2 at 22. But that is different from Blue Bird's policy that employees with recent written disciplinary warnings were ineligible for internal job openings.

Lewis's new supervisor, Patrick Robirts, received complaints about Lewis "almost immediately." Docs. 36-5 ¶¶ 3, 8; 36-2 ¶ 88; 44-2 at 23. He received reports that Lewis had reprimanded a security guard for doing his job too slowly and that Lewis had criticized a member of the cleaning crew for not cleaning thoroughly enough and for idleness. Docs. 36-5 ¶¶ 9-10; 44-2 at 24. Lewis disputes Blue Bird's use of the word "altercation" to describe these events but not the events themselves. Doc. 44-2 at 24. Robirts testified that each time he received a complaint, he told Lewis that it was not his responsibility to reprimand his coworkers. Doc. 36-5 ¶¶ 9-10, 12. Robirts also testified a truck driver complained that while Lewis was testing the brakes of a Blue Bird vehicle, Lewis "stomped on the brakes" when the driver's truck was closely behind him, nearly resulting in a collision. *Id.* ¶ 13. Robirts testified that when he told Lewis to check the rearview mirror before performing the braking tests, Lewis "proceeded to explain DOT regulations regarding following distance[.]" *Id.* In his deposition, Lewis admitted he was not paying attention to the truck behind him, but again cited DOT regulations regarding following distance. Doc. 255:23-257:7.

Robirts contacted Rebecca Ashford, Blue Bird's Director of Human Resources, to draft a "Final Written Warning" documenting those incidents. Docs. 36-5 ¶¶ 15, 16-18; 44-2 at 95. That warning was issued on June 30, 2016, and Lewis received it on August 16, 2016, after he returned from medical leave. Docs. 36-2 ¶¶ 95-96; 44-2 ¶¶ 95-96; 39 at 235. On August 26, Lewis filed another EEOC charge,[7] alleging the

---

[7] The charge, like Lewis's original complaint in this action, alleged that Blue Bird's actions were motivated by ageist animus in additional to racial animus. Docs. 39 at 199; 1. However, Lewis's amended complaint does not allege age discrimination. So there is no age discrimination claim in this lawsuit.

warning was retaliation for his previous EEOC charges. Docs. 36-2 ¶ 99; 44-2 ¶ 99; 39 at 244.

On August 19, 2016, Robirts was informed that one of the buses Lewis had inspected was later found to have had an upside-down steering wheel. Doc. 44-2 ¶¶ 100-101. Robirts testified that when he discussed the matter with Lewis, Lewis insisted the vehicle had been properly inspected and began criticizing other employees' job performance. Doc. 36-5 ¶ 18; *see* Doc. 44-2 ¶ 102. Then, on August 30, 2016, Robirts received a warranty claim for a bus inspected and signed off on by Lewis which had faulty "high idle" programming. Doc. 36-5 ¶ 20. On September 27, 2016, McCurdy and Ashford decided to terminate Lewis's employment on the basis of the bus inspection problems and his prior disciplinary record. Docs. 36-2 ¶¶ 109-111; 44-2 at 27-28.

On September 24, 2018, Lewis filed suit against Blue Bird. As amended, his complaint alleges that Blue Bird failed to promote him and created a hostile work environment (Doc. 15 ¶¶ 4-10, 19-24), that Blue Bird disciplined him in February 2016 in retaliation for his January 2016 EEOC complaint (*id.* ¶¶ 11-14, 25-27), and that he was terminated because of his race and in retaliation for the January EEOC charge and a later charge, filed in August 2016 (*id.* ¶¶ 17-18, 28-30).

## II. DISCUSSION

### A. Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[]—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court

may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

However, "credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge. . . . The

evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor."  *Anderson*, 477 U.S. at 255.

**B. Analysis**

    *1. Failure to Promote*

    A Title VII plaintiff may prove his case circumstantially when there is no direct

evidence of discrimination.  The framework for analyzing circumstantial evidence to

establish a prima facie case of discrimination is found in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  Pursuant to *McDonnell Douglas*, a plaintiff must first

establish a prima facie case of discrimination.  If a plaintiff establishes that prima facie

case, the burden of production, but not the burden of persuasion, shifts to the employer

to articulate a legitimate, non-discriminatory reason for the employment action.  *Tex.*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of

production means the employer "need not persuade the court that it was *actually*

motivated by the proffered reasons" but must produce evidence sufficient to raise a

genuine issue of fact as to whether it discriminated against the plaintiff.  *Kragor v.*

*Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added)

(quotation marks and citation omitted).

    A plaintiff then has the opportunity to show that the employer's stated reason is a

pretext for discrimination.  This may be done "either directly by persuading the court that

a discriminatory reason more likely motivated the employer or indirectly by showing that

the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Kragor*, 702 F.3d at 1309.

"A *prima facie* case of discriminatory failure to promote requires the plaintiff to show that [1] he is a member of a protected class; [2] he was qualified for and applied for the promotion; [3] he was rejected; and [4] other equally or less qualified employees who were not members of the protected class were promoted." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) (citation omitted).

Blue Bird argues that it is entitled to summary judgment on the failure to promote claim because Lewis was unqualified for the position due to a disciplinary warning. Blue Bird argues that because he was not qualified, Lewis cannot make out a prima facie case of discrimination, and that the disciplinary warning also constitutes a legitimate, non-discriminatory reason for promoting Britt over Lewis. Doc. 36-1 at 7-8, 12-14.

Blue Bird points to undisputed evidence that on December 9, 2015, Gregory contacted the Director of Human Resources and asked her to prepare a written warning for Lewis regarding his job performance. Docs. 36-2 ¶ 24; 44-2 ¶ 24. Blue Bird has a policy providing that employees are not eligible for promotion if they have had a disciplinary warning "in the past six months." Docs. 36-6 ¶ 22, at 92; 36-2 ¶ 35; 44-2 ¶ 35. That policy applied equally to employees regardless of race. Docs. 36-2 ¶ 36; 44-2 ¶ 36.[8] Two other applicants, Britt and Adams, did not have disciplinary warnings. Docs. 36-2 ¶ 44; 44-2 ¶ 44.

---

[8] Lewis disputes that the promotions policy concerning disciplinary records applies equally. Doc. 44-2 ¶ 36. The basis of that dispute is that Blue Bird waived technical requirements (such as prior work

In response, Lewis first argues that "[n]o disputes exist regarding the core elements of Lewis's failure to promote claim: '. . . (3) he met or exceeded the qualifications for the position.'" Doc. 44 at 6. That is not true—Blue Bird argues Lewis was not qualified. *See* Doc. 36-1 at 7-8 (arguing Lewis cannot meet the qualification element of his prima facie case). But the Court agrees that Blue Bird's policy of declining to promote those with disciplinary infractions is more properly addressed as a legitimate, non-discriminatory reason for refusing to promote Lewis than as an element of the prima facie case. Blue Bird's job posting set out the objective qualifications for the position, and Lewis met those qualifications. The fact that Blue Bird's management would not promote someone with a disciplinary infraction is more relevant to Blue Bird's proffered reason for hiring someone else. Based on the undisputed facts, Blue Bird has met its burden of proffering a legitimate, non-discriminatory reason for not promoting Lewis.

Further, Lewis cannot demonstrate pretext. As noted, Lewis does not seriously dispute the disciplinary record.[9] Instead, he argues that reason is pretextual because he was better qualified for the job than Britt. Doc. 44 at 7. But "[i]n a failure to promote case . . . a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted." *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000), *overruled on other grounds by*

_____

experience) for the position. But the fact Blue Bird was flexible with work experience requirements has no bearing on whether the promotions policy regarding *discipline* was applied equally.

[9] In his brief, Lewis conclusorily claims that "[t]he disciplinary memo was back-dated to December 9." Doc. 44 at 2. However, in his response to Blue Bird's statement of material fact, Lewis admitted he has no way of knowing when the disciplinary action was initiated. Doc. 44-2 at 11-12. Given Lewis's documented disciplinary history, the parties' focus on the promotion eligibility policy, exceptions to the policy, and "backdating" arguably leads them to miss a larger point. Clearly, disciplinary history can be a relevant factor in promotion decisions.

*Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). Rather, disparities in qualifications are only evidence of pretext if the disparities are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* (quotation marks omitted) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)).

Lewis had more industrial maintenance experience than Britt. But Lewis also had a disciplinary report, Blue Bird clearly had a policy against internal promotions for employees with recent disciplinary warnings, and they claimed then, as they do now, that they chose not to promote him because of that policy. Lewis has made no showing that that race-neutral reason is pretextual. Accordingly, Blue Bird is entitled to summary judgment on the failure to promote claim.

### 2. Retaliation

Lewis claims that Blue Bird retaliated against him when it (a) suspended him on February 8, 2016, (b) issued warnings to him in February and August, and (c) terminated his employment. Doc. 15 ¶¶ 13, 15, 17, 25-27.

Lewis relies upon circumstantial evidence to prove his retaliation claim, so the Court evaluates that claim using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he *prima facie* case for retaliation requires the employee to show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action. These three elements create a presumption that the adverse action was the product of an intent to retaliate. Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the

defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case. After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181–82 (11th Cir. 2010) (citation omitted).

Clearly, Lewis engaged in statutorily protected activity when he filed EEOC charges. The parties argue at some length over whether Blue Bird's actions should be analyzed individually or collectively for purposes of determining whether Blue Bird took adverse action against him. Docs. 44 at 13-14; 46 at 5-6. But the Court does not reach that question because the undisputed evidence reveals no causal link between Lewis's protected activity and the alleged adverse actions, whether viewed individually or collectively. Further, Blue Bird has proffered unrebutted legitimate, non-retaliatory reasons for each of those actions.

a. Sending Lewis Home on February 8, 2016

Although Lewis purports to base his retaliation claim in part on a February suspension, his brief barely addresses the circumstances of that suspension. *See* Doc. 44 at 16. Further, although Lewis persists in calling it a "suspension" (*see, e.g.*, Doc. 44-1 ¶ 14), he conceded that the suspension was later changed to a written warning. Docs. 36-2 ¶ 75 ("McCurdy changed the disciplinary action from a possible suspension to a written warning"); 44-2 at 21 (admitting that fact). The evidence regarding Lewis being sent home is based largely on his personal testimony, but that testimony is

marked by frequent memory lapses and digressions. The Court will do its best to figure out the basis for Lewis's conclusory statement that his being sent home was retaliatory.

Blue Bird's counsel asked Lewis, in his deposition, whether he remembered being asked by Britt, his supervisor, to come to a meeting and had refused, insisting the meeting be held at Human Resources. At first, Lewis said he had no memory of it. Doc. 39 at 183:19-184:12. Once Lewis's recollection was refreshed by his documentation of the incident, he testified that his "gut instinct" was to distrust Britt. *Id.* at 194:1-22. Because of that, Lewis insisted he would not meet with Britt—his supervisor—except in the Human Resources department.[10] *Id.* at 193:22-194:5. Lewis remembered Gregory sending him home but could not remember why, except that Gregory told him that Britt was his boss. *Id.* at 185:16-22. He could not recall further details of the conversation but interpreted Gregory's comment as motivated by a "slavery mentality." *Id.* at 185:23-187:7. Lewis then said that Gregory "discriminates against black people on a regular, routine basis" and prays after safety meetings. *Id.* at 186:10-16. The prayer, he stated, is significant because the Ku Klux Klan has used religion to justify its actions. *Id.* at 186:17-25. There is no evidence that Gregory's prayers had any racial content.

Lewis claims that although Gregory told him he was sending him home for insubordination, the real reason was retaliation for his EEOC charge. Doc. 39 at 133:14-20, 185:16-186:5. Lewis admitted he never told Gregory about the EEOC charge, but instead told Mike McCurdy in Human Resources. *Id.* at 195:9-12. Lewis could not remember when he told McCurdy of the EEOC charge. *Id.* at 196:12-197:25.

---

[10] There is no indication in the briefs or in the record that Lewis expressed concern about discrimination as the reason for insisting on meeting at Human Resources.

But Lewis claimed that he has a recording of it.  *Id.* at 197:11-24.  Lewis's only evidence

that Gregory knew of the EEOC charge is his assumption that "Michael McCurdy and

Kenneth Gregory, all those guys, they talk, they communicate."  *Id.* at 195:24-25.  But

McCurdy testified he did not discuss the EEOC charge with Lewis's supervisors or

anyone else outside of Human Resources.  Doc. 36-3 ¶¶ 8-9.  And Gregory testified he

was not aware of the EEOC charge at the time he sent Lewis home.  Doc. 36-4 ¶ 26.

"In order to satisfy the 'causal link' prong of a prima facie retaliation case, a

plaintiff must, at a minimum, generally establish that the defendant was actually aware

of the protected expression at the time the defendant took the adverse employment

action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).

Because Gregory was not aware of the charge when he decided to send Lewis home,

Lewis cannot demonstrate a causal link between the EEOC charge and the discipline.

Facing this undisputed evidence, Lewis can point only to temporal proximity

between McCurdy's receipt of the EEOC charge (February 5) and his being sent home

(February 8).  Doc. 44; *see* Doc. 40 at 81.  It is true that in some circumstances,

temporal proximity, in combination with other facts, may satisfy the causal link element

of a prima facie retaliation case.  *See, e.g., E.E.O.C. v. Reichhold Chems., Inc.*, 988

F.2d 1564, 1572 (11th Cir. 1993) (holding that the EEOC's unsuccessful retaliation

claim was not frivolous and reversing fee award).  But the alleged insubordination

occurred the morning of February 8, and Lewis was sent home that afternoon.  In light

of Lewis's intervening alleged misconduct and the near-immediate response to that

misconduct, the fact that McCurdy received notice of Lewis's EEOC charge three days

earlier does not support an inference of causation.  And, again, there is no evidence

Gregory knew about the charge. In short, based on the circumstances here, temporal proximity does not satisfy the "causal link" element of a prima facie retaliation case.

Finally, Lewis has produced no evidence that Gregory's proffered reason for sending him home—insubordination—is unworthy of credence. Accordingly, Gregory's sending Lewis home because he refused to meet with his supervisor provides no basis for Lewis's retaliation claim.

### b. The Disciplinary Warnings

Lewis also claims Blue Bird issued him disciplinary warnings in retaliation for filing an EEOC charge. Paragraph 15 of Lewis's amended complaint alleges:

> On February 12, 2016 Plaintiff was given a second fabricated discipline notice, again in retaliation for filing the EEOC charge. On August 16, 2016 Plaintiff was given a final written warning for alleged incidents occurring 3-4 months prior, for which Plaintiff was never informed of or counseled for.

Doc. 15 ¶ 15. In his response to Blue Bird's motion for summary judgment, Lewis states that he complained about being sent home from work, alleging it was retaliatory, and Blue Bird sent him a written warning. Doc. 44 at 16 (citing Doc. 44-2 ¶ 32 (citing Doc. 39 at 220)). That is the sum total of Lewis's argument on the issue, and it is clearly insufficient. The fact that Blue Bird sent him a final warning, shortly after he was sent home, proves nothing about why the warning was issued. Nor do the complaint's conclusory allegations that the discipline was "fabricated" and "retaliation" constitute evidence supporting his retaliation claim. Nevertheless, the Court has reviewed the record to determine whether any evidence supports Lewis's retaliation claim based on the disciplinary warnings.

The February 12, 2016 warning referenced Lewis's disobedience of Britt's instructions, told him that conduct was insubordination, and instructed him not to deviate

from his assignments in the future. Doc. 30 at 220. As noted, Lewis admitted his unwillingness to meet with Britt, so there was clearly a basis for the warning. Even assuming the warning was adverse action, Lewis has no evidence of a causal link between his EEOC charge and the February 12 warning, so he cannot make out a prima facie case. But even if he could, Blue Bird clearly had a legitimate, non-discriminatory reason for the warning, and Lewis has no evidence that that reason is unworthy of credence. Accordingly, the February 12, 2016 warning provides no basis for Lewis's claims of retaliation.

Nor does the August 16, 2016 warning. First, the warning is dated June 30, 2016, though Lewis did not receive it until August 16. Doc. 36-5 at 17. Contrary to Lewis's claim that the warning concerned "alleged incidents occurring 3-4 months prior," the warning actually referenced a series of events, all but one occurring within the month preceding the warning. Those incidents were: an altercation with a security guard on April 6, 2016; an altercation with a cleaning crew member on June 11, 2016; creating a safety hazard by abruptly braking on June 20, 2016; and creating a safety hazard, against a security guard's instructions, by parking a bus in the wrong place during a high-traffic period of the day on June 22, 2016. Doc. 39 at 235-36. Second, Robirts testified he was not aware of the EEOC charge at the time he issued the warning, and Lewis has no evidence to the contrary.[11] Doc. 36-5 ¶ 24. Third, Lewis provides no evidence that the stated reasons for the warning are unworthy of credence. Rather, Lewis simply claimed he could not remember whether he had done most of

---

[11] Lewis disputes this because McCurdy had notice of Lewis's EEOC complaints in February 2016. Doc. 44-2 ¶ 82; see Doc. 40 at 80-81. Lewis, however, provides no evidentiary basis to support his speculation that McCurdy's knowledge would have been shared with Robirts, nor does he provide any legal authority indicating McCurdy's knowledge may be imputed to Robirts.

those things or not.[12]  Doc. 40 at 251:13-255:22, 257:20-21.  He did remember abruptly braking but insists that incident was not his fault because of DOT regulations about following distance.  *Id.* at 255:23-257:10.  However, the warning itself acknowledged the other vehicle may have been following too closely, but admonished Lewis to be more careful.  *Id.* at 235.  The point is not who bore more blame for the incident, but that in Robirts's view, Lewis bore some blame because he abruptly braked when a vehicle was following closely.

Lewis has provided no evidence indicating a causal link between his protected activity and the June 30, 2016 warning, and even if he had, Blue Bird clearly provided a legitimate, non-retaliatory reason for that warning.  For those reasons, the warning Lewis received on August 16, 2016 provides no basis for Lewis's retaliation claim.

c. Lewis's Termination

Blue Bird argues that Lewis was terminated for "negligently inspecting the bus and falsifying the inspection checklist."  Doc. 36-1 at 13.  Blue Bird has adduced evidence that a bus inspected by Lewis was later found to have faulty programming for its "high idle" setting.  Docs. 36-5 ¶ 20; 36-6 ¶¶ 20-21, at 119.[13]  Blue Bird investigated

---

[12] It is especially surprising that Lewis could not recall the incident with the security guard, identified by Blue Bird as "Captain Watson," and insisted he could not remember ever knowing anyone by that name. On August 16, 2016, Lewis filed an internal complaint alleging Captain Watson was harassing him and creating a hostile work environment by making false statements about him to management between April 2016 and the date of the internal complaint.  Doc. 36-6 ¶ 42, at 113; *see also* Doc. 44-2 ¶ 97.

[13] Lewis disputes this on three grounds: first, that Blue Bird does not support it with "documentary" evidence; second, that although Blue Bird claims it was a 30-day warranty claim, Blue Bird actually has a year-long warranty for this issue; and third, that Washington's declaration is hearsay.  Docs. 44-2 ¶¶ 103-104; 44 at 17.  In response to the first point, the Court notes that Blue Bird produced "documentary" evidence and affidavit testimony documenting the claim and its investigation of the claim.  As to the length of the warranty, Lewis offers no evidence that the warranty for this sort of claim ran for a year, and even if he did, the length of warranty is not relevant.  As to the hearsay objection, Blue Bird's evidence on the high idle issue comes from Robirts's testimony (to which Lewis makes no hearsay objection) and records kept in the course of regular business activity.  Doc. 36-6 at 119-121; *see* Fed. R. Evid. 803(6).

the high idle issue and determined that the bus still had its factory settings, so the high idle switch had never been activated.  Docs. 36-5 ¶ 20; 36-6 at 119.  Further, because the high idle had not been correctly programmed at the time Lewis inspected it, Robirts concluded that Lewis falsely signed off on that item in his inspection checklist.  Docs. 36-5 ¶ 20; 36-6 at 119, 121.  He brought the issue to the attention of Human Resources. Lewis was terminated for the faulty inspection and his extensive disciplinary record. Docs. 40 at 209:21-23; 39 at 250.  Clearly, there is ample evidence of legitimate, non-discriminatory reasons for Lewis's termination.

Lewis's effort to demonstrate pretext is perfunctory.  His only argument that Blue Bird's legitimate, non-discriminatory reasons are unworthy of credence is that it was impossible for Blue Bird to determine whether the high idle problem was present when Lewis inspected it or arose later on, and that even if Lewis failed to inspect it, it was only one mistake.  Doc. 44 at 17.  On the first point, Lewis is simply wrong.  The record establishes that the new bus's "parameters [were] not set for high idle[.]"  Doc. 36-6 at 119.  The bus, which still had its factory settings, had only been in service for two days. Doc. 36-5 at 6.  A Blue Bird dealer fixed the problem by reprogramming the factory settings.  *Id.*  Yet Lewis's inspection sheet certified that the high idle was working properly.  *Id.* at 121.  Clearly, this was sufficient to warrant Blue Bird's conclusion that Lewis's inspection and certification were improper.  As for the second point, Lewis only quibbles with Blue Bird's reasons for his termination; he does not demonstrate pretext.

In short, Robirts had grounds for believing Lewis had failed to properly inspect the bus and falsified his inspection checklist, and Lewis has produced no evidence that those grounds were pretextual.  Further, Lewis's well-documented history of poor job

performance and conflict with coworkers and superiors is undisputed. There is ample evidence to support Blue Bird's proffered reasons for terminating him, and Lewis provides no evidence demonstrating those reasons are unworthy of credence.

### 3. Discriminatory Termination

For the same reason, Lewis's discriminatory termination claim fails. He has produced no evidence that Blue Bird's proffered legitimate, non-discriminatory reasons for terminating him are unworthy of credence. Further, as Blue Bird argues, Lewis cannot make out a prima facie case because he cannot show a comparator.

In the case of termination based on race, the *McDonnell Douglas* framework requires proof of four elements to establish a prima facie case:

> [A] plaintiff makes out a *prima facie* case by showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class.

*Smith v. Mobile Shipbuilding & Repair, Inc.*, 663 F. App'x 793, 799 (11th Cir. 2016); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275-1276 (11th Cir. 2008); *see also Paye v. Sec'y of Def.*, 157 F. App'x 234, 236 (11th Cir. 2005); *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.* ex rel. *Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Lewis does not argue he can show a comparator or a replacement. Instead, he insists that he can "establish his *prima facie* showing of race discrimination relating to his termination with evidence showing his termination occurred under circumstances giving rise 'to an inference of unlawful discrimination.'" Doc. 44 at 16 (quoting *Burdine*, 450 U.S. at 253). But whatever Lewis means by "prima facie showing," it is clear it is

not the *McDonnell Douglas* framework. In fact, Lewis apparently rejects any "rigid, mechanistic test" and simply ignores the *McDonnell Douglas* framework for his termination claim. *Id.* at 12, 16-18. The Court agrees with Blue Bird that Lewis cannot identify a comparator and, therefore, cannot make out a *McDonnell Douglas* prima facie case. The appropriate standard for evaluating whether a plaintiff can survive summary judgment without direct evidence or the benefit of the *McDonnell Douglas* framework is whether the plaintiff can show "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (citation omitted). The Court, therefore, assumes Lewis is attempting to argue a convincing mosaic theory.

Lewis attempts to show a convincing mosaic of circumstantial evidence by arguing that "white employees regularly violated work and safety rules with impunity" and that "buses were regularly returned because of quality control problems, yet no one other than Plaintiff was ever disciplined for allegedly conducting faulty inspections." Doc. 44 at 17 (citing Doc. 44-2 ¶¶ 41-42).

These assertions purport to come from his declaration, but that is not what Lewis said. He did not state that "no one . . . was ever disciplined" for faulty inspections, but rather that he was not personally aware of anyone else being disciplined for faulty inspections. Doc. 44-1 ¶ 24. Further, Lewis's statements that "white employees . . . nearly burned the plant down" and another white employee failed to properly perform crane maintenance, but were not disciplined, are insufficient. Those allegations appear for the first time in Lewis's declaration attached to his response brief. Docs. 44-2 ¶¶ 41-42 (citing Docs. 44-1 ¶¶ 25-26; 39 at 83); 39 at 83:12-21 (referencing, in passing, a fire

caused by "Russell and his buddy" but not addressing whether they were disciplined for it).  In the declaration, Lewis does not name the white employees whom he claims almost burned down the plant, and he claims the danger was created at least in part by two other employees, "Chris" (Lewis does not mention his last name) and Thomas Britt.

First, there are simply no conclusions to be drawn from Lewis's vague statements about what might have happened to other employees.  It is clear that the employees Lewis claims made mistakes in crane maintenance or caused a fire are not valid comparators under *McDonnell Douglas*: There is no evidence the other employees shared Lewis's employment or disciplinary history or that they were under the same supervisor at the relevant time, and the evidence indicates that their alleged misconduct was different.  *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227 (11th Cir. 2019) (noting that ordinarily, a valid comparator will be the same as the plaintiff in those four respects).  Lewis appears to argue that, in theory at least, the convincing mosaic framework may allow meaningful comparisons to other employees who are too different to qualify as a comparator for purposes of the *McDonnell Douglas* framework. However, the vast differences between Lewis and the other employees means they are not similarly situated at all.  Even allowing Lewis's new allegations at this late stage and accepting them as true, it is simply impossible to conclude anything from the lack of discipline of those other employees.

Second, Lewis's lack of personal awareness of others being terminated, despite being aware of warranty claims for buses, simply does not support an inference of race discrimination.  There is no evidence in the record of what the "quality control problems" were, whether they were the sort of problems that indicated faulty inspections, the

circumstances of those returns, or which white employees Lewis claimed were not disciplined. Again, the comparison simply is not probative of Blue Bird's reasons for terminating Lewis. Lewis has not established a convincing mosaic of circumstantial evidence.

### 4. Hostile Work Environment

To establish a prima facie case for a hostile work environment claim, a plaintiff must prove that (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her race or gender; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) there is a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010).

When evaluating whether the harassment is sufficiently severe or pervasive, the Court looks at the totality of the circumstances and considers "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Conduct is objectively severe when the workplace is permeated with intimidation, ridicule, and insult. *Id.* at 1276-77.

Lewis's hostile work environment claim is based on the following allegations: a supervisor threatened to beat him, the letters "KKK" had been graffitied onto a tractor, and he received "closer scrutiny and harsher discipline than white co-workers." Doc. 44 at 18. The amended complaint alleged a white employee referred to him using a racial

slur (Doc. 15 ¶ 6), but Lewis did not argue this as part of his hostile work environment claim in response to the summary judgment motion, and the Court can find no evidence of it in the record.

The supervisor who threatened to beat him was Mike Willard. According to Lewis, Willard twice stated he would beat Lewis with a belt and once stated he would ask another employee to beat Lewis. Doc. 39 at 147:19-148:2, 199. This language made Lewis feel demeaned because it reminded him of slavery, but he did not tell Willard that. *Id.* at 84:10-87:2, 147:19-148:2. Lewis testified that on other occasions, Willard was complimentary and encouraging toward him. *Id.* at 82:19-84:23. There is no indication that Blue Bird's management was aware of Willard's behavior before it received Lewis's EEOC charge in February 2016. After it received the charge, Blue Bird investigated and determined that Willard made similar comments to other employees, some of whom were white and some of whom were African-American. Doc. 36-6 ¶¶ 35, 37. Even if Willard's comments were insensitive, Blue Bird's management promptly investigated Lewis's allegations and took corrective action.

Lewis also claims that "KKK" was written on a tractor. Doc. 39 at 155:17-157:4. But Lewis took pictures of it and sent them to the EEOC, and those pictures indicate that what was written was "KK"—not "KKK". *See id.* at 174:17-177:9, 199-203. Lewis admits there is not a third "K," but speculated that it had been painted over. He also admitted he could not remember whether he had ever seen a third "K." *Id.* at 176:19-177:9. The Court cannot see a third "K" in the picture or any indication that a third letter was painted over. *See id.* at 199-203. There is no evidence of a third "K."

When Blue Bird's Human Resources department received notice of the EEOC charge in February 2016, it conducted its own investigation of Lewis's allegation. That investigation concluded that "KK" was the nickname of a Blue Bird employee, Spivey, and that Spivey had probably written on the tractor. Doc. 36-6 ¶ 36. There is no evidence that "KKK" was ever painted on the tractor or that "KK" had any racial overtones. The tractor graffiti, therefore, was not based on race and was not objectively offensive, nor was Blue Bird's response to the tractor graffiti.

In short, there is no evidence that either Willard's comments or the tractor graffiti were harassment based on Lewis's race, nor were they the sort of "severe or pervasive" harassment necessary to support a claim for hostile work environment. *Reeves*, 594 F.3d at 808; *see also Mitchell v. Carrier Corp.*, 954 F. Supp. 1568, 1573 (M.D. Ga. 1995), *aff'd,* 108 F.3d 343 (11th Cir. 1997) (granting summary judgment on a hostile work environment claim based on more severe and pervasive harassment than that alleged here); *Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (affirming summary judgment on a hostile work environment claim based on more pervasive and severe harassment than that alleged here). Blue Bird is entitled to summary judgment on this claim.

### 5. Mixed Motive

In response to Blue Bird's motion, Lewis briefly argues a mixed-motive theory. Doc. 44 at 21. Although mixed-motive cases do not implicate the *McDonnell Douglas* framework, the Court has, as discussed, thoroughly considered the record and found no evidence that Blue Bird's employment actions toward Lewis were motivated, in whole or in part, by Lewis's race or his EEOC complaints. Further, Blue Bird has produced

ample evidence that its actions toward Lewis were motivated by its belief that Lewis had difficulty following directions, habitually reprimanded his coworkers, and falsified inspection documents. The Court concludes that Lewis has not "presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that" his race or his complaints were "a motivating factor" for any of Blue Bird's employment actions toward him. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016).

*6. Generic Convincing Mosaic*

As noted above, in his discriminatory termination claim, Lewis failed to argue *McDonnell Douglas* or cite to any other established framework for resolving summary judgment motions in Title VII cases. Accordingly, the Court construed his argument as espousing a convincing mosaic theory. However, at the end of his brief, Lewis recites every incident discussed above—Britt's promotion, vague allegations of lenient discipline for unnamed white employees who committed unnamed violations, Lewis's belief there had been a third "K" painted on a tractor, proximity in time between Lewis's EEOC charges and disciplinary action, Blue Bird's inaction when Willard threatened to beat Lewis (and Lewis didn't report it), and Lewis's termination—and simply alleges that those events form a convincing mosaic of circumstantial evidence sufficient to prove both racial discrimination and retaliation. Doc. 44 at 20-21. However, after carefully considering each of those instances, the Court finds that, even taken together, they do not create a convincing mosaic of circumstantial evidence on the basis of which a reasonable jury could find that Blue Bird had engaged in racial discrimination or retaliation.

**III. CONCLUSION**

For the reasons noted above, Blue Bird's motion for summary judgment (Doc.

36) is **GRANTED**.

**SO ORDERED**, this 12th day of March, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT